ROTHENBERG, J.
Gulfside Supply, Inc. (“Gulfside”) is a roofing supply company that supplied roofing materials to GMT Construction, Inc. (“GMT”) and Anderson Roofing (“Anderson Roofing”). The issue in this case is whether GMT and Ronald Smith, an officer of GMT, breached GMT’s contract with Gulfside by failing to pay for roofing materials purchased from Gulfside and charged to GMT’s account. For the reasons explained below, we reverse the trial court’s order granting summary judgment in favor of Gulfside.
Although GMT performed roof replacements and repairs, it also referred some of its roofing work to Anderson Roofing and Kent Spires (“Spires”) who was the vice-president of Anderson Roofing. The undisputed evidence is that Spires was given authority by GMT to purchase materials on GMT’s account when performing roofing work for GMT. Spires also had full authority to enter into contracts and purchase materials on Anderson Roofing’s behalf while vice-president of Anderson Roofing, and Anderson Roofing gave him a company debit card for that purpose.
While employed by Anderson Roofing, Spires was hired by Ocean Key Resort (“Ocean Key”) to apply a roofing product, Seal 0 Flex, to its facility. The contract, signed by Spires and Ocean Key, was rendered on Anderson Roofing’s letterhead, and Ocean Key’s initial payment for the work was deposited into Anderson Roofing’s checking account. It is also undisputed that GMT did not refer this particular project to Spires or Anderson Roofing and GMT was not involved with, or had any knowledge of, this project. Rather, the referral came from Juan Sotolongo, Gulfside’s manager, who had received a call from Ocean Key seeking a referral for the application of the roofing product. So-tolongo, who expected to receive compensation for the referral, accompanied Spires to bid on the project. After Spires’ bid was accepted, Spires purchased the necessary supplies from Gulfside and paid for the supplies using Anderson Roofing’s debit card.
After the Seal 0 Flex product was applied to the roof at the Ocean Key facility, Seal 0 Flex inspected the work, found that its product had been improperly applied, and demanded that the work be redone. In explaining the situation to Sotolongo, Spires told Sotolongo that he lacked the funds to purchase the necessary materials from Gulfside to redo the project. Soto-longo suggested that Spires charge the materials to GMT’s account and when Spires received final payment from Ocean Key, he could pay off the charges made to GMT’s account. Spires accepted Sotolon-go’s suggestion, and although GMT had no involvement in the project and did not authorize the use of its account for the charges made by Spires, Sotolongo, on behalf of Gulfside, processed the order. As Spires never completed the project, he received no further payments from Ocean Key, and, therefore, he failed to pay for the charges he made to GMT’s account, which were made without GMT’s knowledge or consent.
Gulfside submitted invoices to GMT for the materials Spires and Sotolongo charged to its account. When GMT failed to pay the invoices, Gulfside filed suit against GMT for breach of contract. GMT filed its answer, raising the affirmative defenses of estoppel, waiver, and unclean hands, and included a counterclaim for negligent supervision against Gulfside. Relevant to this appeal, Gulfside filed a motion for summary judgment, arguing that the credit agreement required GMT to provide Gulfside with a written: (1) revocation of Spires’ authority to purchase materials on its account; and (2) notice of *517 any disputed charges within ten days of invoice — both of which GMT admitted it had not done.[1]
GMT opposed Gulfside’s motion arguing that GMT had not authorized, purchased, or received the supplies; GMT had contested the charges; and the damages sought were incorrect because payments made by Anderson Roofing for some of the Ocean Key materials had not been properly credited to GMT’s account. After an unsuccessful mediation, the trial court entered a final judgment granting Gulfside’s motion for summary judgment and awarding Gulfside attorney’s fees and costs. GMT’s subsequent motion for rehearing was denied by the trial court, and this appeal followed.

DISCUSSION

The trial court’s ruling on summary judgment is subject to our de novo review. Progressive Am. Ins. Co. v. Gregory, Inc., 16 So.3d 979, 980-81 (Fla. 3d DCA 2009) (citing Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000); Bldg. Educ. Corp. v. Ocean Bank, 982 So.2d 37, 40 (Fla. 3d DCA 2008)). It is well-established that summary judgment is only proper where, after review of every inference in favor of the non-movant, no genuine issue of material fact remains. Bldg. Educ. Corp., 982 So.2d at 40 (citing Volusia Cnty., 760 So.2d at 130). The burden is on the party moving for summary judgment to establish that it is enti-tied to judgment as a matter of law. Calarese v. Weissfisch, 87 So.3d 1225, 1227 (Fla. 3d DCA 2012) (citing Holl v. Talcott, 191 So.2d 40, 43 (Fla.1966)). Moreover, where affirmative defenses are plead, the movant for summary judgment is similarly burdened and must conclusively refute the affirmative defenses. Calarese, 87 So.3d at 1227 (citing O’Neal v. Brady, 476 So.2d 294, 294 (Fla. 3d DCA 1985)). Based on the foregoing principles of law, we reverse the trial court’s order awarding final summary judgment in favor of Gulfside because we find that (1) genuine issues of material fact remained; and (2) Gulfside failed to “conclusively refute, by disproving or establishing the legal sufficiency of,” GMT’s affirmative defenses. Calarese, 87 So.3d at 1227.
GMT specifically raised the affirmative defenses of waiver and estoppel in its answer to Gulfside’s complaint. To support its claim that Gulfside had waived the written notice requirement, GMT provided evidence in the form of deposition testimony by Smith that when he called Gulfside to contest the charges, Sotolongo told him not to worry about the invoice because Spires would pay the bill. See Mark v. Hahn, 177 So.2d 5, 8 n. 1 (Fla.1965) (holding that waiver of a contractual condition “may be inferred from conduct or acts putting one off his guard and leading him to believe that a right has been waived”) (quoting Rader v. Prather, 100 Fla. 591, 130 So. 15, 17 (1930)). Smith *518 testified that he relied on Sotolongo’s verbal reassurance, which lulled him into not taking any further action to contest the charges. GMT also claimed that because Sotolongo, Gulfside’s manager, had represented to Smith that he actually knew that Spires, and not GMT, was liable for the supplies for the Ocean Key job, Gulfside was estopped from now claiming that GMT was liable for the same charges. Nunes v. Allstate Inv. Props., Inc., 69 So.3d 988, 991 (Fla. 4th DCA 2011) (holding that ex-wife who had actual knowledge of forgery of deed prior to purchase of the property by innocent buyer and allowed the sale to proceed was estopped from later asserting interest in the property). GMT’s answer also included an affirmative defense of unclean hands, alleging that Gulfside could not benefit from its employee’s fraudulent conduct. While GMT provided the testimony of Smith, Anderson, and Spires to support its position, Gulfside did not provide any evidence or affidavits to contradict or deny GMT’s affirmative defenses. Therefore, Gulfside failed to meet its burden of “showfing] there are no issues of material fact” as to GMT’s affirmative defenses and that it is “entitled to judgment as a matter of law.” Calarese, 87 So.3d at 1227.
In addition to Gulfside’s failure to conclusively refute GMT’s affirmative defenses, the record clearly evidences that issues of material fact remained. The un-rebutted testimony of Spires, Smith, and Anderson, was that: (1) GMT did not order or receive the supplies for which it was invoiced; and (2) Gulfside’s manager, Soto-longo, knew that Spires did not have authority to charge the materials on GMT’s account. The depositions of Smith, Anderson, and Spires, which raised issues of material fact, were filed with the trial court before the status conference and should have been considered by the trial court when ruling on Gulfside’s motion for summary judgment. Moreover, further issues of fact were raised as to: (1) whether Sotolongo had the apparent authority to release GMT from the written notice requirement of the credit agreement; and (2) whether Sotolongo’s actions constituted a waiver of the ten-day written objection requirement. Accordingly, summary judgment was precluded because issues of material fact remained. Bldg. Educ. Corp., 982 So.2d at 40. We, therefore, reverse the entry of summary judgment in favor of Gulfside and remand for further proceedings.
Reversed and remanded.

. The credit agreement states that:
3. Any disputed item, term or provision of GULFEAGLE SUPPLY’S printed invoice or statement, claim of damage or material defect or shortage must be made in writing by the customer and sent to GULFEAGLE SUPPLY, 1451 Channelside Drive, Tampa, FL 33605, Att: Director/Financial Services via certified mail within 10 days of date of invoice in order to be considered a reasonable claim....
[[Image here]]
5. Unless express and specific written directions are given to GULFEAGLE SUPPLY to the contrary, all employees, office or jobsite personnel, or apparent agents of the customer shall be authorized to make purchases on the account, and/or accept material deliveries.